IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| FIRST AMERICAN TITLE INSURANCE CO., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | C.A. No. 10-cv-363 (GMS) |
| MACLAREN, L.L.C., | ) | |
| Defendant. | ) | |

## MEMORANDUM

**I.  INTRODUCTION**

On April 29, 2010, the plaintiff, First American Title Insurance Company ("First American"), filed the above-captioned action against MacLaren, L.L.C. ("MacLaren"), seeking: (1) declaratory judgment, pursuant to 28 U.S.C. § 2201, that it does not have a duty to defend MacLaren in a state court action in which MacLaren is the defendant ("the underlying state court action"); and (2) reformation of the parties' title insurance policy, due to the parties' mutual mistake or to unilateral mistake. (D.I. 1.) On July 30, 2010, MacLaren filed its Answer to First American's Complaint, pleading, among its affirmative defenses, a counterclaim seeking declaratory judgment that First American has a duty to defend it in the underlying state court action. (D.I. 10 at ¶¶ 5-15.)

On November 4, 2011, following completion of discovery, MacLaren filed a Motion for Summary Judgment with respect to its duty to defend counterclaim, as well as a Motion to Stay the remaining proceedings pending resolution of the underlying state court action. (D.I. 30.) In response, First American filed an Answering Brief opposing the motions on November 16, 2011 (D.I. 33) and, on November 28, 2011, MacLaren filed its Reply (D.I. 34). Presently before the

court are MacLaren's motions for summary judgment and to stay the remaining proceedings. (D.I. 30.) For the reasons that follow, the court will grant MacLaren's motions.

## II. BACKGROUND

The following facts are taken from First American's Complaint and, where identified, the parties' submissions in connection with the instant motions. First American is a California company that maintains an office in Wilmington, Delaware, and "issues commitments to insure and policies of title insurance in connection with real estate transactions." (Id. at ¶ 5.) The defendant, MacLaren, is a limited liability company located in Milton, Delaware, and is comprised entirely of its principal, Dr. Jonathan L. Patterson ("Patterson"). (Id. at ¶ 6; D.I. 33 at 1.) In the spring or summer of 2007, Patterson began searching for a commercial property in which he could open a radiology practice. (D.I. 33 at 1.) During his search, Patterson identified a commercial office park ("the office park") in Milton, Delaware, which was owned by Point Management, L.L.C. ("Point Management") and listed for sale. (D.I. 1 at ¶ 8.) Point Management also owned a residence located approximately two or three blocks from the office park ("the residence"), which was not for sale. (Id. at ¶¶ 8-11.)

After visiting the office park, Patterson, via MacLaren, submitted an offer for it on August 21, 2007 in the amount of $2,000,000.00. (Id. at ¶ 13.) Patterson did not visit the residence, nor was he aware of it, before submitting his offer for the office park to Point Management. (Id. at ¶ 16.) Point Management tasked its attorneys at Young, Conaway, Stargatt & Taylor ("Young Conaway") with reviewing MacLaren's offer and preparing an executable Purchase and Sale Agreement (the "Agreement"). (Id. at ¶ 17.) According to Point Management, Young Conaway inadvertently included the residence's tax parcel number in the Agreement selling the office park to MacLaren. (Id. at ¶ 18.) The parties executed the

2

Agreement without discussing the residence and, according to First American and Point Management, Point Management did not intend to sell the residence, did not reference the residence in its listing agreement with its broker, and did not know that it was erroneously included in the Agreement. (Id. at ¶¶ 20-23.) Prior to settlement, an issue arose regarding Point Management's sale of a portion of the office park to a third party at an earlier date. (Id. at ¶¶ 21-22.) The parties ultimately resolved the issue by requiring the third party to convey property back to Point Management, delaying settlement until February 29, 2008. (Id.)

MacLaren's counsel, Tunnell & Raysor, P.A., prepared the deed to be executed at settlement. (Id. at ¶ 23.) This deed, which was substantively based on the Agreement Young Conaway drafted, also referenced the residence's tax parcel number, but, according to Point Management, did not include an actual metes and bounds description encompassing it. (Id. at ¶ 24.) Point Management asserts, however, that after the parties executed the deed Tunnell & Raysor prepared, it was altered prior to recordation to include the residence within the metes and bounds description of parcels conveyed in the transaction.[1] (Id. at ¶¶ 25-27.) In support of this allegation, First American attaches copies of what it alleges to be the original and the altered deed as exhibits to its Complaint. (Id. at Ex. A; Ex. B.) MacLaren purchased title insurance from First American, covering the parcels detailed in the legal description of the recorded deed.

---

[1] In its Opening Brief in support of summary judgment, MacLaren challenges Point Management's assertion that it fraudulently altered the deed, stating that, after the parties resolved the conveyance issue identified prior to settlement:
> Point Management's attorneys from Young Conway Stargatt & Taylor drafted a new sales agreement which took out the portion of the office park that had been sold to Mr. Reed and added the [] residence. Hal Dukes of Tunnel & Raysor told Dr. Patterson that the [] residence was included in the revised transaction. Shortly after settlement, Jane Patchell, Esq. of Tunnell & Raysor saw that there was an error in the deed signed at settlement in that tax parcel number 52.03 (the tax parcel number for the [] residence) and the legal description in the deed did not match that in the sales agreement. She called Colby Cox of Point Management and he authorized her to change the deed to be filed so that it would conform with the sales agreement.

(D.I. 31 at 9-10.) The court notes that these assertions are not supported by citations to the record.

3

(Id. at ¶ 29.) Because the recorded deed was used to describe the insured parcels, the residence was included in the title insurance policy. (Id.)

In January 2009, Point Management learned that the residence had been conveyed to MacLaren. (Id. at ¶¶ 44-45.) Point Management asserts that it contacted MacLaren's counsel at Tunnell & Raysor, who admitted that the residence was not supposed to be included as a parcel in the transaction.[2] (Id. at ¶ 46.) Despite this admission, however, MacLaren refused to cooperate with Point Management in filing a corrective deed. (Id. at ¶ 47.) Following this refusal, Point Management filed suit against MacLaren and others[3] on August 26, 2009 in the Chancery Court of the State of Delaware. (Id.) Point Management's Chancery Court complaint in the underlying state action sets forth ten counts, including claims for reformation, fraud, misrepresentation, tortious interference, and conversion, and seeks the imposition of a constructive trust on the residence. (Id. at ¶ 48.) Point Management's reformation counts allege mutual mistake and unilateral mistake coupled with fraud or inequitable conduct. (Id. at Ex. D.)

MacLaren tendered the defense of the underlying state action to First American under the terms of its policy. (Id. at ¶ 52.) First American took a statement from Patterson prior to accepting the tender of defense, in which Patterson admitted he had a conversation with his attorneys at some earlier point during which he stated he was unaware the residence was included in the deed. (Id. at ¶¶ 55-56.) However, Patterson told First American that this earlier

---

[2] Specifically, First American notes that MacLaren attorney, Hal Dukes, sent a letter to Point Management after it discovered the residence was included in the deed, stating:
> I have had several conversations with the Maclaren group concerning the mistake in the deed description. I have explained to them that the realtors and the parties to the negotiations never included this property to be part of the transfer. While it is obvious that the Maclaren group should not receive the house as a result of this mistake, they have not replied to any of my requests.

(D.I. 33 at 8 (quoting Letter from Dukes to Point Management, D.I. 33, Ex. 7).) First American notes that Dukes was terminated as counsel shortly thereafter. (Id.)

[3] Point Management's complaint also brings suit against Tunnell & Raysor and Artisans' Bank, the entity through which MacLaren obtained a mortgage. (D.I. 1 at ¶ 49.)

4

statement to his attorneys was not accurate.[4] (Id.) First American ultimately accepted the tender of defense under reservation of right because it recognized that the "duty to defend is broader than the duty to indemnify" and supplied MacLaren with counsel in the ongoing underlying state court action. (Id.)

First American filed suit against MacLaren in this court seeking declaratory judgment that it is not required, based on the terms of its policy, to defend MacLaren in the underlying state court action. (Id.) Specifically, First American alleges that, even though the terms of its policy insure the residence, MacLaren's actions before and/or after settlement demonstrate that he did not intend to buy the residence and, therefore, should not have been included.[5] (Id.) To this end, First American asserts that MacLaren's conduct constituted "creat[ing], assum[ing], suffer[ing], or agree[ing]" to the problem it seeks to have defended under the policy. (D.I. 33 at 12.) As this type of conduct falls within coverage Exclusion 3(a) of the policy, First American contends that it is entitled to judgment declaring that it does not have to defend MacLaren in the

---

[4] First American includes its conversation with Patterson in its Answering Brief:
Q: Did you ever tell anyone that you were not aware that the residential house was included on the deed?
A: There was a discussion with the attorneys at the time.
Q: Which attorneys?
A: Patchell and Hal Dukes.
Q: What was the nature of the discussion?
A: We were just confirming what tax ID goes with what taxes I had paid.
Q: And so, you told them at that time that you were not aware that the residential house was included on the deed?
A: I did at that time, but it was incorrect.
(D.I. 33 at 10 (quoting Patterson Statement, January 5, 2010, at 6-10, D.I. 33, Ex. 4).)

[5] Specifically, First American asserts that the following actions are inconsistent with MacLaren's contention that it knew of the residence, intended to buy it, and understood in advance of the closing that it was included in the deed: (1) Patterson did not visit the residence before making an offer for the office park and the residence was not referenced in MacLaren's initial office park offer; (2) Patterson did not visit the residence between the time the Agreement was signed and the closing; (3) MacLaren did not tell its lender for the office park about the residence; (4) MacLaren had the office park inspected prior to closing but did not order inspections on the residence; (5) MacLaren insured the office park after closing and contracted for lawn maintenance and snow removal of that location, but did not contract for insurance or similar services at the residence; and (6) MacLaren did not collect rent from the tenants living at the residence for the first year after it was purchased. (D.I. 33 at 1-8.) In sum, First American argues that MacLaren did not act or assert its ownership of the residence until Point Management recognized that it was inadvertently conveyed during the settlement transaction. (Id. at 8-9.)

underlying state court action. First American also seeks reformation of the title insurance policy to exclude the residence from coverage. (D.I. 1.)

## III. STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 568 n.10 (1986). The district court, when determining whether a genuine issue of material fact exists, must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

However, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* Specifically, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Motion to Stay an Action

The power to stay a case is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). To this end, the power to stay an action, in non-mandatory stay cases, is firmly within the discretion of the court. *See id.*; *see also Cost Brothers, Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In assessing whether to stay an action, courts are tasked with "balanc[ing] interests favoring a stay against interests frustrated by the action."[6] This balance is guided by consideration of such factors as: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *See Xerox Corp. v. 3 Comm. Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citations omitted).

## IV. DISCUSSION

As noted, First American contends that it does not have a duty to defend MacLaren in the underlying state action because MacLaren "created, assumed, suffered[,] or agreed to the problem it now seeks to have defended under the policy." (D.I. 33 at 12.) Because such conduct falls within policy Exclusion 3(a), First American seeks declaratory judgment to this effect. (D.I. 1.) Moreover, First American seeks reformation of the parties' title insurance policy with respect to the policy's current inclusion of the residence as an insured parcel. (Id.)

---

[6]*See Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

7

In response, MacLaren asserts, in its Motion for Summary Judgment, that First American has a duty to defend it in the underlying state court action because at least one claim of Point Management's Chancery Court complaint—specifically, its Count I claim of mutual mistake—is clearly covered by the title insurance policy. In particular, MacLaren points to the First American policy provisions creating a duty to defend "any matter insured against by this policy," including "[t]itle being vested other than in Schedule A"[7] or "[a]ny defect or lien or encumbrance on the Title." (D.I. 34 at 5-6.) MacLaren argues that Point Management's mutual mistake claim is a risk clearly contemplated by the policy and, therefore, that First American must defend it in the action. Moreover, and with respect to First American's reformation claim, MacLaren asserts that this claim should be stayed pending resolution of the underlying state court action in order to avoid needlessly expending limited judicial resources by trying the same issue in two fora.[8] (Id. at 5.)

## A. MacLaren's Motion for Summary Judgment

MacLaren argues that the court should grant its Motion for Summary Judgment on its counterclaim because, in consideration of Delaware law and the relevant pleadings, First American has failed to show that there are genuine issues of material fact with respect to whether it has a duty to defend MacLaren in the underlying state court action. (D.I. 31 at 10-13; D.I. 34

---

[7] MacLaren notes that Schedule A "identifies the titleholder as MacLaren and in the description of the property covered by the policy includes "Tract No. 2 2-35 20.11 52.03," the tax parcel number for the [residence], and the legal description of the [residence]." (D.I. 34 at 5-6.)

[8] The court notes that MacLaren also argues that this case should be stayed because "the issue of MacLaren's and Point Management's intent is being litigated in the first-filed *Point Management* action" and "[u]nder Delaware law, 'litigation should be confined to the forum in which it is first commenced.'" (Id. at 14 (quoting *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering, Co.*, 263 A.2d 281, 283 (Del. 1970)). To the extent that MacLane presents a "first-filed" argument in support of its Motion to Stay, the court clarifies that the "first-filed doctrine" is inapplicable in this case. Specifically, Third Circuit controlling law dictates that the first-filed rule only applies to parallel proceedings in federal courts. *See Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 368 (D. Del. 2009) (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). In fact, the "first-filed doctrine has long functioned as a 'policy of comity' counseling 'trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases . . . in different federal district courts.'" *See id.* To this end, the court notes that, in granting MacLaren's Motion to Stay the remaining proceedings, it does not, as explained below, rely on the first-filed doctrine.

at 3-5.) Under Delaware law, an insurance company's duty to defend is broader than its duty to indemnify. *See State Farm Fire & Cas. Co. v. Maltman ex rel. Maltman*, No. 345 Civ. A.1975, 1976 WL 168381, at *2 (Del. Super. 1981). In determining whether an insurance company has a duty to defend an insured against a third party, courts are instructed to look to the allegations of the underlying third party complaint to assess whether that complaint "alleges a risk within the coverage of the policy." *See Continental Cas. Co. v. Alexis I. DuPont Sch. Dist.*, 317 A.2d 101, 103 (Del. 1974) (citations omitted). In this assessment, courts are often guided by the principles that: (1) "where there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured"; (2) "any ambiguity in the pleadings should be resolved against the carrier"; and (3) "if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises." *Id.* at 105.

Moreover, the determination as to whether a duty to defend exists is objective, in that the court should seek to ascertain "not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it to mean." *See Rhone-Poulenc Basic Chems. Co. v. American Motorist Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). Delaware law also clarifies that:

> The obligation of the insurance company to defend an action against insured, as distinguished from its obligation to pay a judgment in that action, by the overwhelming weight of authority is to be determined by the allegations of the complaint. *This obligation is not affected by facts ascertained before suit or developed in the process of litigation* or by the ultimate outcome of the suit. If the allegations of the complaint state a cause of action within the coverage of the policy, the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend. *In case of doubt such doubt ought to be resolved in the insured's favor.*

*Maltman ex rel. Maltman*, 1976 WL 168381, at *2 (emphasis in original) (citation omitted). To this end, where an insurer's duty to defend an insured is established, an

9

insurer will be excused from its duty to defend only if it can demonstrate that the "allegations of the underlying complaint are 'solely and entirely' within specific and unambiguous exclusions from coverage." *See Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 526 (D. Del. 2001) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc Basic Chems. Co.*, No. 87 C-SE-11, 1992 Del. Super. LEXIS 45, *8 (Del. Super. Ct. Jan. 16, 1992)).

In view of relevant Delaware law, the Point Management complaint in the underlying state court action, and the title insurance policy attached to the parties' pleadings, the court concludes that First American has failed to show there are genuine issues of material fact for trial. Here, the parties do not dispute that the title insurance policy requires First American to defend MacLaren where the property it acquired is challenged as: (1) "vested other than as stated in Schedule A," which states, for instance, the name of the insured and legal description of the conveyance; and/or (2) subject to a "defect or lien or encumbrance." (D.I. 31 at 12; D.I. 1, Ex. C.) The parties also do not dispute that Point Management's complaint includes: (1) Count I, which alleges a claim for reformation due to Point Management and MacLaren's mutual mistake as to the inclusion of the residence; and (2) Count IV, which alleges a claim for reformation based on Point Management's unilateral mistake, wherein no misconduct by MacLaren is claimed.[9]

Despite these undisputed facts, First American asserts that summary judgment should not be granted on MacLaren's counterclaim. Specifically, First American notes that Point

---

[9] Specifically, Point Management alleges that:
At the time of closing Point Management reasonably believed and expected only the Federal Street Property was being conveyed to MacLaren in exchange for payment by MacLaren of the Purchase Price. Without this expectation, Point Management would not have sold the Federal Street Property to MacLaren for the Purchase Price. The identification of the Residential Property by tax map and parcel in the Agreement and the Original Deed executed by Point Management was a mistake.
(D.I. 34 at 5 (quoting D.I. 32, Ex. D, Point Management Complaint at ¶ 72).)

10

Management, in addition to alleging a mutual mistake claim, also asserted claims that MacLaren acted fraudulently, as demonstrated by its actions of altering the deed prior to recordation, admitting to its counsel that it was unaware the residence was included in the Agreement, and refusing to correct the deed though it took no actions after settlement demonstrating knowledge of the residence. First American argues that it is clear from MacLaren's combined actions that it "assumed" and/or "accepted" the defect in title Point Management alleges. Because MacLaren's assumption or acceptance of any defect in title is expressly excluded from insurance coverage, First American contends it does not have a duty to defend. While First American's assertions may raise genuine issues of material fact as to whether MacLaren was aware the residence was included in the deed—and, therefore, raise facts material to whether First American has a duty to indemnify[10]—they do not raise genuine issues of material fact relevant to its duty to defend under Delaware law. Rather, the fact material to MacLaren's duty to defend counterclaim is whether the underlying third party complaint pleads at least one cause of action covered by the policy. Consequently, because Count I alleges a cause of action covered by the title insurance policy and First American has failed to show that Point Management's allegations of mutual mistake "are 'solely and entirely' within specific and unambiguous exclusions from coverage," summary judgment is appropriate.[11]

---

[10] Under Delaware law, an insurer's duty to defend an insured is broader than its duty to indemnify. *See Alexis I. DuPont Sch. Dist..*, 317 A.2d at 103. Specifically, while an insurer may have a duty to defend an insured in a third party action, the duty to indemnify is narrower and arises only when the insured is determined to be liable for damages within the policy's coverage. *See id.* Consequently, while the court here concludes that First American has a duty to defend MacLaren in the underlying state court action, it does not reach the issue of whether First American has a duty to indemnify, as this determination will require assessment of whether MacLaren was aware that Point Management did not intend to convey the residence as a part of the transaction at issue.

[11] *See Brosnahan Builders, Inc.*, 137 F. Supp. 2d at 526 (citation omitted); *see also Goodville Mut. Cas. Co. v. Baldo*, Civ. No. 09-338-SLR, 2011 U.S. Dist. LEXIS 59526, *5 (D. Del. Jun. 2, 2011) (concluding that, under Delaware law, an insured may be excused from its duty to defend only where it can be "determined, as a matter of law, that there is no possible fact or legal basis upon which the insurer might eventually be obligated to indemnify the insured").

11

## B. MacLaren's Motion to Stay the Remaining Proceedings

MacLaren argues that the court should stay the remaining proceedings—specifically, First American's claim with respect to reformation of the parties' title insurance policy—pending resolution of the underlying state court action. (D.I. 34 at 5.) In support of this argument, MacLaren contends in part[12] that allowing this action to proceed during the pendency of the underlying state court action would unnecessarily waste judicial resources and potentially result in inconsistent factual findings. (Id.) This court agrees.

Under Delaware law, parties may reform a contract where there is evidence of mutual mistake or unilateral mistake. *See Cerberus International v. Apollo Management, L.P.*, 794 A.2d 1141, 1151 (Del. 2002). To support reformation based on mutual mistake, it must be shown that the contract does not represent the parties' intent due to a mistake, "common to both parties," when the contract was reduced to writing. *See Westfield Insurance Co. v. Chip Slaughter Auto Wholesale*, 717 F. Supp. 2d 433, 434-444 (D. Del. 2010). To meet this requirement, the moving party must show by "clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement." *Id.* at 1151-52. To reform a contract based on unilateral mistake, the party asserting reformation must "show that it was mistaken and that the other party knew of the mistake but remained silent." *See Cerberus Int'l*, 794 A.2d at 1151.

A review of Point Management's complaint in the underlying state court action makes clear that questions of fact related to First American's reformation claim will be resolved in that proceeding. Specifically, Point Management's complaint includes claims for reformation of MacLaren's deed based on mutual mistake and unilateral mistake. First American does not dispute that the title insurance policy's coverage was based on the Point Management-MacLaren

---

[12] *See supra* note 8.

deed and encompasses the parcels conveyed in that deed.[13] Consequently, the determination of whether the title insurance policy should be reformed will depend on factual findings related to whether the deed conveying the residence from Point Management to MacLaren was the result of mutual or unilateral mistake. In light of this factual overlap and the fact that the same issues will otherwise be tried in two fora, the court concludes that the interests of judicial efficiency and economy would be served by staying this action pending the outcome of the underlying state court proceeding. Additionally, the court also finds that the resolution of these factual disputes in the state court matter will serve to simplify the issues in question in this case, as well as ensure consistent rulings in both actions.

The court also notes that First American's assertion that it will be "severely prejudiced" if the court stays this matter pending resolution of the underlying state court action does not undermine its findings. (D.I. 33 at 19.) First American contends, in support of this assertion, that it is accumulating significant fees defending MacLaren in state court and that, if it "is correct that there is no coverage for the claims in the Point Management litigation and/or that the Policy should be reformed to remove the Residence from the legal description, First American would have no duty to defend or indemnify MacLaren." (Id.) In light of this court's ruling that First American has a duty to defend MacLaren in the underlying state action, however, the court is not persuaded that First American will be severely prejudiced by the accumulation of legal fees it has a duty to incur. Finally, and in consideration of the foregoing, the court further concludes that the fact that discovery is complete and a trial date is set in this matter, does not outweigh the interests of judicial efficiency and consistent adjudications that can be achieved by staying this

---

[13] In its Answering Brief, First American notes that the title insurance policy "used the same legal description to describe the property as was used in the deed, which description included the Residence." (D.I. 33 at 5.)

13

matter pending resolution of the state action and the factual issues bearing on First American's reformation claim in this court.

V.  **CONCLUSION**

For the foregoing reasons, the court will grant MacLaren's Motion for Summary Judgment and its Motion to Stay the proceedings pending resolution of the underlying state court action.

Dated: March 9, 2012

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MACLAREN, L.L.C., ) <br> ) <br> Defendant. ) <br> _____) | C.A. No. 10-cv-363 (GMS) |

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion for Summary Judgment (D.I. 30) is GRANTED;

2. The defendant's Motion to Stay the remaining proceedings pending resolution of the underlying state court action (D.I. 30) is GRANTED; and

3. The parties are directed to submit a joint status report to the court every six months.

Dated: March 9, 2012

_____
CHIEF, UNITED STATES DISTRICT JUDGE